United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 27, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————

No. 03-10753

————————————

CEDRIC DAVIS and RUFUS JOHNSON,

Plaintiffs – Appellants,

v.

DALLAS AREA RAPID TRANSIT and JUAN RODRIGUEZ,

Defendants – Appellees.

————————————

Appeal from the United States District Court
for the Northern District of Texas

————————————

Before JOLLY, JONES, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge.

Cedric Davis and Rufus Johnson appeal from the district court's entry of summary judgment in favor of defendants, Dallas Area Rapid Transit and Dallas Area Rapid Transit Chief of Police Juan Rodriguez, in a suit alleging race discrimination, retaliation, and hostile work environment under Title VII of 42 U.S.C. § 2003e *et seq*. ("Title VII"), 42 U.S.C. § 1981(a), 42 U.S.C. § 1983, and 42 U.S.C. § 1988. The district court held that Appellants failed to raise a fact question on their claims regarding their nonselection for promotions to lieutenant, and that their remaining claims were barred by *res judicata*. For the reasons stated below, we AFFIRM the judgment of the district court.

1

**BACKGROUND**

Cedric Davis and Rufus Johnson ("Appellants"), African-American males, first collectively

filed suit against their employer, Dallas Area Rapid Transit ("DART"), and DART Chief of Police

Juan Rodriguez ("Chief Rodriguez"), on November 16, 2001 (*"Davis I"*).[1] In *Davis I*, Appellants

alleged race discrimination and retaliation under Title VII and violations of the First and

Fourteenth Amendments under 42 U.S.C. § 1983. The claims in *Davis I* were based on alleged

conduct by DART and Chief Rodriguez occurring between November 1998 and February 2001,

during Appellants' employment at DART as police officers.[2] In February 2002, the district court

dismissed the claims in *Davis I* with prejudice.[3]

On June 26, 2002, Appellants filed the current lawsuit against DART ("*Davis II*"),

alleging race discrimination, retaliation, and hostile work environment in violation of Title VII and

42 U.S.C. § 1981(a). Appellants amended their complaint in *Davis II* on January 28, 2003 to

include parallel claims against Chief Rodriguez under 42 U.S.C. § 1983 and 42 U.S.C. § 1988[4] for

violations of the First and Fourteenth Amendments. The claims in *Davis II* were predicated on

various alleged incidents of discrimination and retaliation occurring between March 2001 and

---

[1]*Davis I* (*Davis & Johnson v. DART & Rodriguez*, No. 3:01-CV-2595-M) was filed in state court and then removed to the United States District Court for the Northern District of Texas. Prior to filing *Davis I*, Appellants had also filed individual lawsuits against DART: Davis had sued DART in state court on February 1, 2001; Johnson had sued DART in state court on March 12, 2001, and the case was removed to federal court.

[2]Johnson is still employed with DART as a corporal. Davis voluntarily resigned from DART in January 2003.

[3]Johnson's claims were dismissed February 1, 2002, and Davis's claims were dismissed February 21, 2002.

[4]42 U.S.C. § 1988 is an attorney's fee provision.

2

April 2002, including complaints that Appellants had been wrongly excluded from the lieutenant promotion process between December 2001 and April 2002.

On June 24, 2003, the district court entered summary judgment in favor of DART and Chief Rodriguez in *Davis II*. The court held that Appellants failed to present a genuine issue of material fact about whether their nonselection for lieutenant promotions was based on either race discrimination or retaliation. The court concluded that Appellants' remaining claims, predating and unrelated to the lieutenant promotion process at DART, were precluded as *res judicata* by the judgment in *Davis I*. Appellants timely appealed the district court's judgment in *Davis II*.

## ANALYSIS

### Res Judicata

The doctrine of *res judicata*, or claim preclusion, forecloses relitigation of claims that were or could have been raised in a prior action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Four elements must be met for a claim to be barred by *res judicata*:

(1) the parties in both the prior suit and current suit must be identical;
(2) a court of competent jurisdiction must have rendered the prior judgment;
(3) the prior judgment must have been final and on the merits; and
(4) the plaintiff must raise the same cause of action in both suits.

*Howe v. Vaughn*, 913 F.2d 1138, 1143-44 (5th Cir. 1990).

In the district court, the first three factors of the *res judicata* analysis were not disputed. Only the fourth factor — whether the causes of action were the same in both suits — was at issue. The district court concluded that the claims in *Davis II*, which were based on alleged conduct predating the DART lieutenant promotion process, were part of the same cause of action as the claims in *Davis I* and could have been litigated in *Davis I*. Therefore, the district court held

3

that *res judicata* precluded relitigation of those claims ("barred claims").

In our review of the district court's *res judicata* ruling, we must determine (1) whether the barred claims were part of the same cause of action as the claims in *Davis I*, and (2) whether the barred claims could have been advanced in *Davis I*. The *res judicata* effect of a prior judgment is a question of law that we review *de novo*. *See Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 546 (5th Cir. 2001).

To determine whether the prior and current suits involve the same cause of action, we apply the "transactional" test. *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983). Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff "with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004) (quoting the RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)). What grouping of facts constitutes a "transaction" or a "series of transactions" must "be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting the RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)). The critical issue under the transactional test is whether the two actions are based on the "same nucleus of operative facts." *Id.* at 396 (quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)). Thus, we must review the facts contained in each complaint to determine whether they are part of the same transaction or series of transactions, which arise from the same nucleus of operative facts.

Appellants filed *Davis I* on November 16, 2001. The complaint accused DART and Chief

4

Rodriguez of discrimination and retaliation based on alleged conduct that occurred between November 1998 and February 2001. *Davis I* alleged, among other things, that Johnson was wrongly refused medical leave and that Appellants were denied promotions to the position of sergeant in February 2001. The complaint alleged that the wrongful conduct toward the Appellants was motivated by racial discrimination and was retaliation for previous Equal Employment Opportunity Commission ('EEOC") charges the Appellants had filed. Appellants complained that they were subjected to retaliation and discrimination at DART because they "continue to publicly speak out against race discrimination." *Davis I* was dismissed with prejudice in February 2002.

On June 26, 2002, Appellants filed *Davis II*. The complaint in *Davis II* also alleges discrimination and retaliation by DART and Chief Rodriguez. The barred claims allege conduct occurring between March and November 2001, including: an unwarranted Internal Affairs investigation in July 2001; and a baseless order by Chief Rodriguez to take a polygraph test in August 2001, which DART Executive Vice President Victor Burke later rescinded as retaliatory. The *Davis II* complaint maintains that the alleged wrongful conduct was motivated by race discrimination, by the Appellants' public criticism of DART and Chief Rodriguez at a DART board meeting, and by prior complaints to the EEOC.

Appellants assert that the barred claims in *Davis II* cannot be considered part of the same series of transactions as those in *Davis I*, because the conduct alleged in *Davis II* (spanning March 2001 to April 2002) was different from that alleged in *Davis I* (spanning November 1998 to February 2001). We have held that "subsequent wrongs" by a defendant constitute new causes of action, *see Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981), and that "[a] Title VII

5

plaintiff is free to bring successive actions, claiming in each that his employer has taken retaliatory actions against him more recent than the prior lawsuit," *Dawkins v. Nabisco, Inc.*, 549 F.2d 396, 397 (5th Cir. 1977). However, Appellants are not aided by these principles — the "subsequent wrongs" we previously considered occurred either after the plaintiffs had filed their prior lawsuit or after the district court had entered judgment in the prior lawsuit. Here, the conduct they alleged in *Davis II* occurred before *Davis I* was filed.

Under the transactional test's pragmatic considerations, the barred claims in *Davis II* and the wrongs alleged in *Davis I* constitute a series of connected transactions and are the same claim. While factual allegations articulated in the two complaints differ, all of the claims in question originate from the same continuing course of allegedly discriminatory conduct by DART and Chief Rodriguez. Additionally, both lawsuits cite the same motivation for the alleged discrimination — that Appellants "continue to publicly speak out against race discrimination [at DART]." This statement, from the *Davis I* complaint in November 2001, presumably refers, in part, to Appellants' public complaints of discrimination at the May 2001 DART board meeting and their prior EEOC charges. In *Davis II,* Appellants also claim, explicitly and implicitly, that these charges against DART and Chief Rodriguez motivated the alleged retaliatory conduct.

In addition, the claims precluded in *Davis II* were so connected in time and space with the claims in *Davis I*, that they could have, and should have, been brought in the first action to create a single, convenient trial unit. *Res judicata* "bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication[.]" *Nilsen*, 701 F.2d at 560 (emphasis in original). The barred claims were predicated on conduct that allegedly occurred before Appellants filed *Davis I* in November 2001. Hence, Appellants could

6

have included these claims in the earlier suit.

Appellants argue, however, that they properly excluded these claims from *Davis I* because they did not receive EEOC right-to-sue letters on the underlying allegations until April 1, 2002. A right-to-sue letter is a condition precedent to filing a Title VII claim. *See* 42 U.S.C. §2000e-5(f)(1); *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982). In July 2001, before filing *Davis I*, Appellants filed charges against DART and Chief Rodriguez with the EEOC.[5] The charges alleged that the July 2001 Internal Affairs investigation constituted harassment and retaliation for Appellants' prior criticism of DART and Chief Rodriguez. By the time Appellants received the right-to-sue letters on April 1, 2002, judgment had been entered in *Davis I* for over a month. Hence, Appellants maintain that even if some of the allegations in *Davis I* and *Davis II* were part of the same cause of action and overlapped temporally, the Davis II claims should not be barred because Appellants were not able to bring them in *Davis I*. The district court disagreed, noting that:

> [w]hile Title VII requires exhaustion of administrative remedies before a federal claim may be brought, there were options available to Plaintiffs other than simply choosing between their claims. Plaintiffs could have filed the 2595 suit and requested a stay pending the conclusion of the administrative proceedings on the two EEOC complaints at issue in this discussion, or Plaintiffs could have delayed filing the first suit until the administrative proceedings were completed.

This circuit has never directly addressed whether a Title VII claim may be barred by *res judicata* if, at the time of the earlier suit, the plaintiffs have not yet received a right-to-sue letter. However, several of our sister circuits have answered this question in the affirmative.

---

[5]Appellants also filed a complaint with DART's internal Equal Employment Office regarding the same matters described in the July 2001 EEOC Charges. In August 2001, they received a finding that Chief Rodriguez had retaliated against them.

The district court in this case relied on *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir. 1992), in which the Second Circuit held that a plaintiff's Title VII claims were barred by *res judicata* even though she had not received a right-to-sue letter at the time she filed her lawsuit. In *Woods*, the plaintiff's Title VII claims arose out of the same transaction as a previously filed Labor Management Relations Act ("LMRA") claim. *Id.* at 38. Although the plaintiff did not have a right-to-sue letter from the EEOC when she initiated the LMRA action, the court reasoned that to avoid the sting of *res judicata*, the plaintiff could have filed her LMRA claim, sought a stay in the district court pending the outcome of her EEOC proceedings, and then joined her Title VII claims once she received her right-to-sue letter. *Id.* at 41. In reaching this conclusion, the Second Circuit noted that "the language and policy of Title VII do not undercut the application of res judicata, and we see no reason militating against application of well-settled claim preclusion principles." *Id.* at 39.

Several other circuits have similarly held that Title VII claims were barred where plaintiffs failed to take measures to avoid preclusion under *res judicata* while they pursued the requisite Title VII remedies. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714-15 (9th Cir. 2001) (Title VII claims were not exempt from claim preclusion where plaintiffs failed to seek a stay of proceedings or to amend their complaint); *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 225-26 (7th Cir. 1993) ("Parties to Title VII actions enjoy no immunity from res judicata[.]"); *cf. Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 63 (1st Cir. 2000) (Title VII claim subject to *res judicata* where plaintiff received right-to-sue letter during pendency of prior action); *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (ADA claim was not exempt from *res judicata* where plaintiff failed to obtain right-to-sue letter during pendency of

8

previous litigation); *Churchill v. Star Enters.*, 183 F.3d 184, 193-94 (3d Cir. 1999) (same)*;*

*Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032-33 (6th Cir. 1998) (plaintiff's claims were

barred by *res judicata* where she could have obtained a right-to-sue letter and perfected her claim

during the two-year pendency of prior action).

We agree with the Second Circuit's reasoning in *Wood*s that a plaintiff who brings a Title

VII action and files administrative claims with the EEOC must still comply "with general rules

governing federal litigation respecting other potentially viable claims."  972 F.2d at 39-40.

Because the barred claims arose from the same nucleus of operative fact as the claims in *Davis I*

and they predate that action, Appellants were on notice to include those claims in *Davis I*.  To

prevent their claims from being precluded, Appellants could have requested a stay in *Davis I* until

they received their letters.  Accordingly, we affirm the district court's determination that

Appellants' claims predating and unrelated to the lieutenant promotion process were barred by *res*

*judicata.*

**Claims Related to Lieutenant Promotion Process**

Appellants' remaining claims allege that their exclusion from the lieutenant promotion

process at DART, which occurred between December 2001 and April 2002, was motivated by

race discrimination and was retaliatory.  Appellants claim they each initially met the minimum

requirements for the position, that the requirements were then purposely changed in order to

exclude them from qualifying, and that they were consequently wrongly denied both the

opportunity for promotion and the promotion itself.  On appeal, Appellants maintain that they

presented triable fact issues on each of these claims, and, therefore, entry of summary judgment in

favor of DART and Chief Rodriguez was improper.

9

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir. 1990). In evaluating a summary judgment motion, the district court must draw all reasonable inferences in favor of the non-moving party. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991). We review a district court's grant of summary judgment *de novo*. *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998).

Race Discrimination Claims

Appellants asserted claims of race discrimination against DART under Title VII and 42 U.S.C. § 1981, and against Chief Rodriguez under 42 U.S.C. § 1983. The summary judgment analysis is the same for claims of race discrimination under Title VII, § 1981, and § 1983. *Pratt v. City of Houston*, 247 F.3d 601, 605 n.1 (5th Cir. 2001); *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002).

Cases of discrimination based on circumstantial evidence are subject to the *McDonnell Douglas* burden-shifting analysis. *See Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination. *Patel*, 298 F.3d at 342. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. *See id.* If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears

10

and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination. *See id.*; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000). Here, the district court held that, even assuming that Appellants established a prima facie case, they failed to raise a fact question about whether the defendants' proffered nondiscriminatory reason — that Appellants were not qualified to be lieutenants — was pretextual.

We first evaluate whether Appellants succeeded in presenting a prima facie case of race discrimination against DART and Chief Rodriguez. An employee presents a prima facie case of discrimination in a failure to promote case by demonstrating four elements: (1) that the employee is a member of the protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354-55 (5th Cir. 2001) (citing *Haynes v. Pennzoil Co.,* 207 F.3d 296, 300 (5th Cir. 2000)). That Appellants meet the first, third, and fourth factors is not disputed: they are African-American, they were not promoted, and DART promoted two qualified officers. The only disputed issue is whether Appellants raised a question of fact about whether they were qualified for the lieutenant position.

Between December 2001 and April 2002, DART actively sought officers to fill open lieutenant positions at DART. The first notice for the lieutenant openings was posted in December 2001. The initial posting required, among other qualifications, a bachelor's degree and seven years peace officer experience, including a minimum of one year as a sergeant. In February 2002, Chief Rodriguez announced in a memo that a revised posting would be circulated. The

11

memo stated the following:

> The new, revised posting will still require candidates to have at least seven years experience as a full-time Texas peace officer, including one year supervision. However, the one year of supervisory experience at the rank of Sergeant or above can be in civilian or police work or in any equivalent capacity in the military. We want to take advantage of either civilian or military leadership experience since our internal applicants could possess either or both. For military supervisory experience, candidates must have held at least the pay grade of E-6 or higher.

The subsequent postings included requirements as stated in Chief Rodriguez's memo.

Those interested in the lieutenant position were to submit applications to DART human resources. Applicants possessing the minimum qualifications for the position would continue to the next phase of the promotion process, which included a mandatory civil service exam. DART would select the new lieutenants from those candidates who passed the exam.

Appellants submitted their applications for the lieutenant positions in January 2002, before the revised notices were posted. DART determined that Appellants did not meet the minimum qualifications to become lieutenants under either the initial or revised posting because they did not possess the requisite supervisory experience. Pursuant to that determination, DART informed Appellants that they would be prohibited from taking the civil service exam or advancing any further in the promotion process.

Appellants challenge DART's determination that they were unqualified and claim they were denied access to the promotion process because of their race. In support of their argument, they submit their purported qualifications for the lieutenant position. At the time of their applications, each Appellant held a bachelor's degree and possessed the total amount of education and peace officer experience mandated under the job postings. Both Appellants had served in a supervisory capacity in the military: Davis had been a level E-4 Sergeant, and Johnson had been a

12

level E-5 Sergeant.  However, Appellants possessed neither peace officer experience at the rank of sergeant (as required by the initial posting), nor military experience at the rank of sergeant E-6 or higher (as permitted by the subsequent postings).  Hence, their qualifications were facially insufficient to satisfy the minimum criteria under either of the postings for the lieutenant positions.

Nonetheless, Appellants argue that, had Chief Rodriguez not altered the job criteria, their military supervisory experience would have qualified them under the first posting.  The first posting included a general requirement of peace officer experience at the rank of sergeant — military experience, at any level, was not mentioned.  Appellants specifically assert that their military supervisory positions were functionally equivalent to a Texas peace officer at the level of sergeant, and that persons in DART administration intimated that they were qualified to be lieutenants.  Yet Appellants submitted no evidence that their military experience was commensurate with that of sergeant in law enforcement.  DART, on the other hand, offered the sworn affidavit of Lynda J. Jackson, DART's Vice-President of Human Resources, indicating just the opposite — that DART had never considered military experience for any police officer position in the past.  Thus, Appellants fail to present a genuine issue of material fact that they were qualified to be lieutenants, and therefore fail to establish a prima facie case of race discrimination.

We also note that, even if we were to assume that Appellants presented a prima facie case of discrimination, they did not offer any evidence that their disqualification from the lieutenant promotion process was a pretext for race discrimination.  Appellants suggest that after discovering that Appellants hoped to use their military supervisory experience to qualify them for

the lieutenant positions, DART and Chief Rodriguez deliberately set the standard at a level just above their experience to purposely exclude them from candidacy. However, even if proven, this evidence would not demonstrate racial discrimination. While the two candidates ultimately selected to be lieutenants were white, the record shows that there were other African-Americans who met the required qualifications under both postings. As there was no evidence that DART has ever considered military experience in the past, the evidence suggests that the revision of the job notice was intended to be more inclusive rather than exclusive. Accordingly, we affirm the district court's entry of summary judgment on Appellants' claims of race discrimination.

Retaliation Claims

*Title VII and § 1981 Retaliation Claims Against DART*

Appellants also challenge entry of summary judgment on their claims of retaliation. To present a prima facie case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *see also Foley v. Univ. of Houston Sys.*, 324 F.3d 310, 316 (5th Cir. 2003) (the elements for establishing a prima face case of retaliation under § 1981 are identical to those that must be established under Title VII). To demonstrate the occurrence of an adverse employment action, a plaintiff must show that he suffered an "ultimate employment decision." *See Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). Ultimate employment decisions include actions affecting job duties, compensation, or benefits, such as hiring, granting leave, discharging, promoting, and compensating. *See Banks*, 320 F.3d at 575.

14

If a plaintiff succeeds in making a prima facie case, the burden then shifts to the defendant to proffer a legitimate rationale for the underlying the employment action. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001). If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Id.*

The district court found that Appellants failed to present a prima facie case of retaliation. The court held that although Appellants engaged in a protected activity in filing their EEOC complaints and speaking out against DART and Chief Rodriguez, Appellants failed to allege the necessary adverse employment action. Further, the court found that, even assuming an adverse employment action was presented, no causal link to the protected activity was shown.

Appellants assert that DART's refusal to promote them to lieutenant constituted an adverse employment action. In particular, Appellants argue that DART's revision of the lieutenant job criteria after the initial posting was intended to prevent them from proceeding through the promotion process and from taking the civil service exam. They contend that these acts amounted to an ultimate employment decision by effectively denying them a promotion.

The district court rejected this argument, reasoning that denial of access to the exam and study materials was not the denial of a promotion, but was rather the denial of an opportunity for promotion. Thus, the district court found no adverse employment action. In support of this finding, the trial judge cited our holding in *Banks v. E. Baton Rouge Parish School Board*, that the implementation of a reading test requirement for promotion was not an ultimate employment decision. 320 F.3d 570, 575, 577-78 (5th Cir. 2003).

However, *Banks* is distinguishable from the instant case. In *Banks*, we noted that the

15

plaintiffs did not allege the reading test was unfairly rigged to prevent them from passing. *Id.* In contrast, Appellants allege that the requirements to take the test were unfairly manipulated to prevent them from being promoted. *Banks* also differs from the present case because the plaintiffs in *Banks* complained about the implementation of the test requirement, not the denial of the promotion itself. *Id.* Appellants complain not only that the institution of revised criteria and denial of access to the exam was retaliatory, but also that denial of the promotion itself was retaliatory. Thus, Appellants have alleged they were denied a promotion. Because the denial of a promotion is an ultimate employment decision, Appellants have raised a fact question on the second element of their prima facie case of retaliation.

Having shown a protected activity and an adverse employment action, Appellants still had to raise a fact issue about whether there was a causal link between the two. To demonstrate the causal prong of a retaliation claim on summary judgment, a plaintiff must at least raise a question about whether the person who denied him a promotion was aware of the protected activity. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003).

The district court concluded that Appellants failed to show a causal link because Yolanda Ross, DART's human resources representative who determined which candidates were qualified to take the exam, was unaware of Appellants' EEOC complaints against DART and Chief Rodriguez. Appellants argue, however, that Ms. Ross merely applied retaliatory employment criteria set in place by DART, and that those persons who implemented the criteria were aware of Appellants' EEOC complaints. By linking the denial of the promotion to the requirement that military experience be at level E-6 or above, Appellants may have raised a fact question as to a causal link between their prior EEOC complaints and their failure to be promoted. Consequently,

16

we will assume, *arguendo*, that they presented a prima facie case of retaliation.

Assuming, without deciding, that Appellants made a prima facie case of retaliation, the burden then shifted to DART to proffer a legitimate reason for denying Appellants the promotions. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). DART met this burden by asserting that Appellants were not promoted because they were not qualified under either standard. Thus, the burden shifted back to Appellants to raise a fact question regarding pretext. *See Aldrup*, 274 F.3d at 286.

Appellants point to no evidence suggesting that DART's stated reason for denying them the promotion — that they were unqualified under both the initial and the revised standards — was pretextual. In support of pretext, Appellants proffer evidence that the revision in qualifications was "controversial" and was intended to narrow the criteria, thereby eliminating Appellants from consideration. Because the uncontroverted evidence establishes that Appellants were not qualified under either the initial or the revised posted requirements, their argument that the changes in the qualifications were retaliatory fails. Therefore, summary judgment was appropriate as to Appellants' retaliation claims against DART.

*§ 1983 Retaliation Claim Against Chief Rodriguez*

To establish a First Amendment retaliation claim under § 1983 against Chief Rodriguez, Appellants were required to show that: (1) they suffered an adverse employment action; (2) their speech involved a matter of public concern; (3) their interest in commenting on the matter of public concern outweighed Chief Rodriguez's interest in promoting efficiency; and (4) the adverse employment action was motivated by their protected speech. *See Lukan v. N. Forest Indep. Sch. Dist.*, 183 F.3d 342, 346 (5th Cir. 1999). Because the district court found that Appellants failed

17

to show an adverse employment action under the first element, it entered summary judgment in favor of Chief Rodriguez.

We need not determine whether Appellants presented a fact question on the first, second, and third factors because, even if those elements were satisfied, Appellants fail to establish the fourth factor — that the alleged adverse employment action was motivated by their protected speech. Appellants point to no evidence suggesting that their public criticism of Chief Rodriguez and of DART prompted Chief Rodriguez to revise the lieutenant employment criteria or to disqualify Appellants from consideration. In fact, Chief Rodriguez presented uncontradicted evidence that the DART police department revised the criteria not to retaliate against Appellants, but to be more inclusive in the hiring process. Accordingly, Appellants do not present a triable fact question as to retaliation under § 1983, and, therefore, summary judgment was proper.

## Conclusion

Based on the foregoing analysis, we AFFIRM the district court's entry of summary judgment.

AFFIRMED.