**BRENNAN'S, INC.**

v.

**Richard J. BRENNAN, Jr., et al.**

**No. CIV.A. 04–2808.**

United States District Court,
E.D. Louisiana.

April 11, 2005.

Edward F. Kohnke, IV, Joseph Nicholas Mole, William Howard Berglund, Frilot, Partridge, Kohnke & Clements, LC, New Orleans, LA, for Brennan's Inc, Plaintiff.

Gary J. Elkins, Richard Louis Traina, Yvonne Chalker, Elkins, PLC, New Orleans, LA, for Richard J Brennan, Jr, Dickie Brennan & Company, Inc., Cousins Restaurants, Inc., Seven Sixteen Iberville, L.L.C., Defendants.

### ORDER AND REASONS

LEMMON, District Judge.

**IT IS ORDERED** that defendants' Motion to Dismiss (Document 8) is hereby **GRANTED**.

## A. Background.

Plaintiff, Brennan's, Inc., the owner and operator of *Brennan's Restaurant,* holds a federal trademark in "Brennan's" and certain related marks. Defendant, Cousins Restaurants, Inc. owns and operates *Dickie Brennan's Palace Café,* while defendant Seven Sixteen Iberville, L.L.C. owns and operates *Dickie Brennan's Steakhouse.* Defendant Dickie Brennan & Company, Inc., provides marketing and promotional services for these restaurants. Defendant Richard J. Brennan, Jr. is an officer and member of Cousins, Seven Sixteen, and Dickie Brennan & Company.

In this action Brennan's, Inc. has sued defendants (1) for a declaratory judgment that a contract executed by Richard, Jr. dated October 1, 1998, which plaintiff alleges is the only source for Richard, Jr.'s right to use the names *Dickie Brennan's Steakhouse* and *Dickie Brennan's Palace Café,* has been terminated and is no longer in effect; and (2) for injunctive relief against Richard, Jr. under federal trademark law to prevent his alleged misuse of these names. Defendants have moved to dismiss Brennan's, Inc's suit based on the doctrine of *res judicata.* In order to understand the context of this motion, it is necessary to detail a prior suit involving the parties.

## 1. The prior suit: *Brennan's, Inc., et al. v. Dickie Brennan & Co., Inc., et al.,* Case No. 00–2413.

On August 15, 2000, Brennan's, Inc. and its principals[1] filed Case No. 00–2413 against the current defendants and Richard J. Brennan, Sr., asserting claims for federal trademark dilution, trademark infringement, unfair competition, false representation, false designation of origin, and related state law causes of action against defendants, generally alleging that defendants' use of the names *Dickie Brennan's Steakhouse* and *Dickie Brennan's Palace Café* in connection with restaurant services violated federal and state law. Brennan's, Inc. alleged that the operation of the two restaurants had caused and was likely to cause confusion among consumers.[2] The prior suit expressly sought termination of a contract between Brennan's, Inc. and Richard, Jr. dated October 1, 1998 (the "1998 Agreement") based on a breach thereof.

Under the 1998 Agreement, Brennan's, Inc. agreed not to "object to the operation by Richard Brennan, Jr. of restaurants under the name and marks DICKIE BRENNAN'S PALACE CAFÉ and DICKIE BRENNAN'S STEAKHOUSE, or under other names which may be opened in the future, so long as:"

1. The use of BRENNAN'S by Richard Brennan Jr. shall always be accompanied by the name DICKIE and the term BRENNAN'S shall not be of greater size or prominence than the name DICKIE, and shall be arranged so as to present a combined name of DICKIE BRENNAN'S, as proprietor;

2. The use of DICKIE BRENNAN'S shall be used in conjunction with the

---

1. Owen E. Brennan, Jr., James C. Brennan, and Theodore M. Brennan.

2. Case No. 00–2413, Document 20, at ¶¶ 31, 43.

remaining portions of the names and marks so as to present a unified name and mark, such as DICKIE BRENNAN'S PALACE CAFÉ and DICKIE BRENNAN'S STEAKHOUSE, and the name DICKIE BRENNAN'S shall not be of greater size or prominence than the remaining portion of the restaurant name;

3. The names and service marks of Richard Brennan identified as being permitted hereunder shall not appear in script style; except as shown on Exhibit "A" attached hereto; and

4. No connection is made, promoted, or suggested between any restaurant operated by Richard Brennan Jr. and any restaurant operated under a name or mark owned or licensed by Brennan's Inc., including but not limited to those identified above. By way of example but not limitation, use by Richard Brennan Jr. of terminology such as "original" or "famous" would imply such a connection.

In addition to these four numbered limitations, the 1998 Agreement provided that:

In the event Richard Brennan Jr. becomes aware of any perceived likelihood of confusion or any instance of actual confusion as the result of the use made by each party of their respective marks, Richard Brennan Jr. shall promptly notify Brennan's Inc., and take prompt and effective measures, in full cooperation with Brennan's Inc., to eliminate such confusion.

The rights granted hereunder are personal to Richard Brennan Jr. and may not be assigned, licensed or otherwise encumbered without prior consent of Brennan's, Inc., except that they may be assigned to the heirs hereto.

Case No. 00–2413 was tried to a jury from October 29 to November 8, 2002. The jury had to resolve the issue whether Richard, Jr. breached the 1998 Agreement. If so, the jury had to determine whether the breach was sufficiently serious to dissolve the contract. On November 7, 2002, the jury rendered its verdict, finding that Richard, Jr.'s use of the term "Brennan's" in connection with *Dickie Brennan's Steakhouse* and Dickie Brennan and Co., Inc. breached the 1998 Agreement and awarding damages incurred because of the breach up to the time of the trial.[3] However, the jury determined that the breach was not serious enough to warrant dissolution of the contract, and could be remedied by requiring Richard, Jr. to specifically perform his obligations under the 1998 Agreement.[4]

3. The jury interrogatories asked:

Do you find by a preponderance of the evidence that Richard Brennan, Jr. breached the 1998 Agreement by using the name Brennan's in a manner not authorized by the 1998 Agreement?

a. In connection with Dickie Brennan's Steak House

   _x_  Yes   _____  No

b. In connection with Dickie Brennan's Palace Café

  _____  Yes   _x_  No

c. In connection with Dickie Brennan and Co.

   _x_  Yes   _____  No

See Case No. 00–2413, "Jury Interrogatories" No. 2 (attached to Document 293).

4. The jury interrogatories asked further:

If you have found that Richard Brennan, Jr. breached the agreement ... which of the following do you find:

_____  a. That the type of breach is sufficiently serious to justify dissolution of the 1998 Agreement.

  _x_  b. That the type of breach can be remedied by requiring Richard Brennan, Jr. to specifically perform the obligations under the 1998 Agreement from this date forward.

See Case No. 00–2413, "Jury Interrogatories" No. 4 (attached to Document 293).

On December 13, 2002, the court entered a final judgment in Case No. 00–2413 in accordance with the jury's verdict, stating in part:

2. Richard J. Brennan, Jr. breached the 1998 Agreement by using the name "Brennan's" in a manner not authorized by the 1998 Agreement in connection with "Dickie Brennan's Steakhouse" and "Dickie Brennan & Co.," but Richard J. Brennan, Jr. did not breach the 1998 Agreement in connection with "Dickie Brennan's Palace Café."

\* \* \* \* \* \*

7. Although Richard J. Brennan, Jr. breached the 1998 Agreement, the breach is not sufficiently serious to justify dissolution of the 1998 Agreement, and, accordingly, Richard J. Brennan, Jr. is hereby ORDERED to specifically perform his obligations under the 1998 Agreement from November 8, 2002 forward.[5]

### 2. The current suit.

In the current suit plaintiff Brennan's, Inc. has sued Richard, Jr., Dickie Brennan & Co., Cousins, and Seven Sixteen for a declaratory judgment and injunctive relief. Brennan's, Inc. alleges that the 1998 Agreement "has no term," and therefore "can be terminated by any party thereto upon reasonable notice" pursuant to Civil Code article 2024.[6] Brennan's, Inc. alleges:

On August 5, 2004, Brennan's Inc. served notice on Richard J. Brennan, Jr. that it had elected to terminate the 1998 contract pursuant to Louisiana law, and that Richard J. Brennan, Jr. had 60 days notice of such termination. Richard J. Brennan, Jr. was further informed that as of 60 days from the date of said termination notice, or as of October 5, 2004, he was instructed to cease using the name Brennan's in connection with any restaurant operation, inasmuch as the 1998 Agreement would not longer be in force.[7]

The August 5, 2004 letter states, in its entirety:

Reference is made to the Agreement between you and Brennan's, Inc., signed by you on or about November 16, 1998 (the "Agreement"). On behalf of Brennan's, Inc., you are hereby notified that said Agreement is terminated. Please be advised that as of October 5, 2004, or sixty (60) days from the date of this letter, any use by you, or by any person acting on your behalf, or by any legal entity in which you have any interest, of the trademarks referenced in the Agreement, including but not limited to the service mark "Brennan's" in connection with operation of any restaurant or other business, on any advertising, or on any other printed material, will be a violation of those trademarks.

While Brennan's Inc. believes you are in breach of the Agreement, this termination notice is specifically not based on any such breach. Rather, this termination is based upon Louisiana Civil Code Article 2024, inasmuch as the Agreement is of indefinite duration. Brennan's Inc. specifically hereby reserves its right to ask the appropriate court to terminate the Agreement for the additional reason that you continue to breach the Agreement in violation of the December 12, 2002 Judgment of the United States District Court for the Eastern District of Louisiana, Case No. 00–2413.

Brennan's, Inc. alleges, and Richard, Jr. does not dispute, that "[n]otwithstanding

---

5. Case No. 00–2413, Document 303.

6. Complaint at ¶ 15.

7. *Id.* at ¶ 16.

the notice given to Richard J. Brennan, Jr. to cease use of the Brennan's trademark, he has ignored Brennan's Inc.'s termination notice and continues to use the name Brennan's in connection with restaurant operations." [8] Count One of the Complaint seeks a judgment declaring that the termination letter "was effective to cause the dissolution of the 1998 Agreement and that it is therefore no longer effective, as of that date." [9] Count Two seeks injunctive relief to prevent Richard, Jr.'s violation of plaintiff's trademark rights.[10]

**B. Analysis.**

■ Defendants argue that the current suit is barred by the res judicata effect of the final judgment in Case No. 00–2413. Federal law "determine[s] the preclusive effect of a federal judgment, even if that judgment was based on state law." *Mowbray v. Cameron County, Texas,* 274 F.3d 269, 281 (5th Cir.2001), *cert. denied,* 535 U.S. 1055, 122 S.Ct. 1912, 152 L.Ed.2d 822 (2002).

■ The Fifth Circuit has recognized that res judicata "bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication." *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 312–13 (5th Cir.2004) (italics in original). The test for *res judicata* has four elements: (1) the parties must be identical or in privity, (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction, (3) the prior action must have been concluded by a final judgment on the merits, and (4) the same claim or cause of action must be involved in both suits. *Id.* Brennan's, Inc. disputes whether this suit involves the same claim or cause of action as Case No. 00–2413.

■ In determining whether two suits involve the same claim, the Fifth Circuit has adopted the transactional test of the *Restatement (Second) of Judgments. Matter of Southmark Corp.,* 163 F.3d 925, 934 (5th Cir.1999), *cert. denied,* 527 U.S. 1004, 119 S.Ct. 2339, 144 L.Ed.2d 236 (1999). Under this test:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Restatement (Second) of Judgements,* § 24 (1982). In determining the scope of the relevant transaction:

"Transactions may be single despite different harms, substantive theories, measures or kinds of relief .... That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would call for differ-

8.  *Id.* at ¶ 17.

9.  *Id.* at ¶ 20.

10.  *Id.* at ¶ 21.

ent measures of liability or different kinds of relief."

*Matter of Intelogic Trace, Inc.*, 200 F.3d 382, 386 n. 3 (5th Cir.2000) (quoting *Restatement (Second) of Judgments* § 24, comment c. (1982)). "One major function of claim preclusion is to force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the first suit." 18 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 4408, at 185 (2002). It is therefore "clear" under the transactional test that "a mere change in legal theory does not create a new cause of action." *Id.* § 4407, at 179; *see also* 18 James W. Moore, *Moore's Federal Practice* § 131.21[3][a], at 131–43–44 (3rd ed. 2004) ("[A] claim is coterminous with a transaction or series of transactions, regardless of the number of different legal theories that may arise as a result of plaintiff's alleged damages .... The fact that plaintiff's counsel in the first action didn't happen to think of the theory advanced in the second action will also fail to avoid preclusion.").[11]

■ The court finds that plaintiff's claim that the 1998 Agreement is termina-ble at will under Article 2024 of the Louisiana Civil Code is barred by *res judicata.* Case No. 00–2413 involved the claim that the 1998 Agreement should be terminated. The only grounds asserted for termination was Richard, Jr.'s breach.

In the current suit, plaintiff has changed theories, and now argues that the 1998 Agreement should be terminated because the agreement was terminable at will pursuant to Article 2024, grounds that were in existence at the time of the first suit. Under the *Restatement's* transactional test, "a contract is generally considered to be a single transaction for purposes of claim preclusion." 18 *Moore's Federal Practice* § 131.23[1], at 131–61. This principle is illustrated in the *Restatement:*

> A brings an action against B for the cancellation of a contract made with B, alleging that the contract was procured by the undue influence and fraud of B. After verdict and judgment for B, A brings a new action for the cancellation of the contract, alleging mental incompetency of A. The prior judgment is a bar.

*Restatement (Second) of Judgments,* § 25, Illustration 7. There was no impediment to

---

**11.** These principles are also in accord with Louisiana *res judicata* law, which provides that if a judgment is rendered in favor of a defendant, "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action." LSA–R.S. 13:4231(2). The Official Comment to the 1990 revision of this provision states: ·

> Under present law a second action would be barred by the defense of res judicata only when the plaintiff seeks the same relief based on the same cause or grounds. This interpretation of res judicata is too narrow to fully implement the purpose of res judicata which is to foster judicial efficiency and also to protect the defendant from multiple lawsuits. For example, in *Mitchell v. Bertolla,* 340 So.2d 287 (La.1976), the

plaintiff sued unsuccessfully to rescind the lease for lesion beyond moiety and nonpayment of the rent, and then sued to rescind the same lease for fraud. The supreme court held that the second action was not barred by res judicata because it was based on a different cause (the legal principle upon which the demand is based). Under new R.S. 13:4231, the second action would be barred because it arises out of the occurrence which was the subject matter of the first action.

Although Louisiana law is not at issue in the case,· Louisiana res judicata law (LSA–R.S.13:4231) "was broadened by the 1990 amendment and is now in line with federal provisions." *Mandalay Oil & Gas, L.L.C. v. Energy Development Corp.,* 880 So.2d 129, 142 (La.App. 1st Cir.2004), *writ denied,* 893 So.2d 72 (La.2005).

raising plaintiff's alternative theory of termination under Article 2024 in the first suit. Plaintiff argues that "Brennan's could not have asked for the same declaratory relief it seeks herein in connection with the 2000 litigation, because this case is entirely based on occurrences since the date of the judgment in the 2000 litigation." [12] However, the only such "occurrence" identified by plaintiff is the notification of termination in the letter on August 5, 2004. Plaintiff had the unilateral ability of providing such notice of termination prior to or during the first litigation, thereby satisfying the only precondition to asserting its alternative theory of termination. [13]

The "pragmatic" factors used in applying the transactional test demonstrate the identity of plaintiff's claims in the two suits. Both claims are related in origin and motivation because both originate in and are motivated by Brennan's, Inc.'s quest to prevent Richard, Jr. from using the term "Brennan's." The two claims form part of a convenient trial unit, and could easily have been litigated together in the first suit. There was no reason for defendants to believe during the extensive prior litigation that they would face additional efforts to terminate the 1998 Agreement.

Res judicata is a "salutary" principle that "serves vital public interests." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The Supreme Court has recognized that " 'public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' " *Id.; see also Jackson v. F.I.E. Corp.*, 302 F.3d 515, 529 (5th Cir.2002) (*res judicata* protects "private and public values" such as "repose, finality, and efficiency"). The time for Brennan's, Inc. to litigate whether the 1998 Agreement was terminable at will under Article 2024 was in the prior suit in which it sought to terminate the agreement based on a breach thereof. Brennan's, Inc. is now barred by *res judicata* from seeking to terminate the agreement in a new suit based on a new theory.

## C. Conclusion.

Defendants' motion to dismiss is granted. [14]

---

**12.** Document 13, at p. 3.

**13.** Wright, Miller, and Cooper recognize that "[a] single transaction may support demands for relief based on two or more theories, one of which is not ripe or is subject to a precondition while another is ripe and not subject to the precondition," and indicate that:

> There is much to be said for requiring the plaintiff to inform the court of the theories that are not yet eligible for litigation, and to argue the need for immediate action on the theory that is eligible for present disposition. The court then can determine whether there is good reason to proceed to dispose of the theory that is ready for disposition, or whether it is better to stay proceedings until all matters can be resolved at once.

18 *Federal Practice and Procedure* § 4412, at 312. Several courts have held that a plaintiff may not split a claim by litigating a discrimination suit under state law to judgment and later asserting a federal claim arising out of the same transaction after obtaining a "right to sue" letter. *E.g., Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir.), cert. denied, 540 U.S. 1016, 124 S.Ct. 568, 157 L.Ed.2d 430 (2003). Even though the "right to sue" letter is a precondition of the federal claim that was unsatisfied at the time of the first judgment, the judgment is *res judicata* to the assertion of the subsequent federal claim. *Id.*

**14.** At oral argument on defendants' motion, counsel for Brennan's, Inc. represented that Brennan's, Inc. is not asserting a claim for

breach of the 1998 Agreement. The only claims brought by Brennan's, Inc. in this suit are (1) for a judicial declaration that the 1998 Agreement was terminable at will under Article 2024 of the Louisiana Civil Code, and (2) for injunctive relief to prevent the violation of its trademarks. The court's ruling that Brennan's, Inc.'s claim for declaratory judgment is barred by *res judicata* results in the dismissal of both claims.