# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30985
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 11, 2014

Lyle W. Cayce
Clerk

PRENTIS WILSON,

Plaintiff-Appellant,

v.

EXXON MOBIL CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-1935

Before STEWART, Chief Judge, and JOLLY and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Prentis Wilson ("Wilson") appeals the district court's summary judgment in favor of Exxon Mobil Corporation ("Exxon") in his employment discrimination suit alleging that he was terminated because of his race in violation of 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. § 1981. For the reasons explained herein, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30985

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Exxon operates a refinery in Chalmette, Louisiana and hired Wilson to serve as a "Region 4" Process Team Leader ("PTL") in 2009.  The refinery process involves dangerous chemicals, complex machinery, and significant manpower.  PTL is a supervisory position in the refinery's Process Department where employees execute complex production functions that require strict adherence to Exxon's policies and protocols.  Among other things, the Process Department is tasked with performing "start-up" and "shutdown" procedures of the refinery's machinery.  As a PTL, Wilson operated a console board in the refinery's central control building during various refinery operations, including shutdown procedures.  The console board is an electronic device used to operate and monitor refinery equipment.

During the day shift on August 18, 2010, Region 4 began the process of performing a "long-term shutdown" of its "No. 3 Reformer's debutanizer."  A debutanizer is an apparatus used to separate butane and lighter material from gasoline.  Exxon's long-term shutdown procedure requires PTLs and other employees to follow a very specific process that Exxon developed and memorialized in its written operational procedures.  These procedures were provided to all PTLs, including Wilson.  When Wilson reported to work on the night of August 18, 2010, he learned that a long-term shutdown procedure was in progress.  Because a long-term shutdown of a debutanizer is a particularly dangerous task, Wilson's supervisor, Diego Troncoso ("Troncoso"), assigned both Wilson and another PTL, Jeff Smith ("Smith"), to lead the remaining portion of the shutdown procedure.  Wilson is African American and Smith is Caucasian.

Prior to their taking control of the process, a supervisor reminded Wilson and Smith about the importance of following the written shutdown procedures with precision and without deviation.  The supervisor also instructed Wilson

2

and Smith to notify him if any issues arose during the process. At some point during the shutdown, an employee observed a gasoline leak in Region 4 and notified central control. Central control halted the shutdown and emergency responders reported to the scene to attempt to control what eventually became a significant gasoline leak. Despite their efforts, the leak reached levels sufficient to be considered an environmentally-reportable gasoline spill. It damaged equipment, endangered the community, and remedial efforts cost Exxon approximately $340,000.

Exxon assigned its Technical Service Department Head, Mike Smith, to lead an investigation into the incident. Mike Smith assembled an investigative team tasked with interviewing employees and reviewing data to determine the root cause of the gasoline spill. The investigation yielded a finding that a crucial step in the shutdown process was not performed. More specifically, the team found that the PTLs, Wilson and Smith, did not perform step 7.2 in the shutdown process. Step 7.2 requires PTLs to cross-check the console board's chemical level indicator with an operator in the field who physically examines a "sightglass" to verify that the console's indicator matches the actual chemical levels. After gathering what the investigative team believed was sufficient information about the gasoline spill, they submitted an investigative report to the highest ranking member of the Process Department, Todd Sepulveda ("Sepulveda"). Sepulveda reviewed and analyzed the report. He then decided that Wilson and Smith should be terminated based upon their role in causing the gasoline spill. Sepulveda concluded that as PTLs, Wilson and Smith were equally responsible for executing the shutdown procedure, and as a result, it was appropriate to treat them equally and terminate both of them. The refinery manager, department head, and human resources advisor concurred in Sepulveda's decision to terminate Wilson and Smith.

No. 13-30985

Sepulveda afforded Wilson and Smith an opportunity to resign instead of being terminated. Smith resigned but Wilson declined the offer. Wilson took the position that he properly followed Exxon's operational procedures and even attempted to prevent and correct Smith's mistake—bypassing step 7.2. Therefore, according to Wilson, there were no grounds for discipline and certainly none for termination. Despite Wilson's protestations and claims of blamelessness, on September 3, 2010, Exxon provided him with a letter explaining that he was being terminated "for [his] failure to follow the prerequisites and Step 7.2 of the procedure to Empty the No 3 Reformer Debutanizer for Long Term Shutdown . . . and failure to communicate with Direct Supervision when steps in the procedure were not accomplished."

In July 2012, Wilson filed a federal lawsuit against Exxon alleging racial discrimination claims under Title VII and 42 U.S.C. § 1981.[1] Exxon moved for summary judgment and the district court granted the motion. Wilson timely appealed.

## II. DISCUSSION

### A.

Wilson argues on appeal that the district court erred in granting summary judgment in favor of Exxon because there are genuine issues of material fact with respect to whether he was terminated because of his race. Wilson claims that the district court deviated from the law governing summary judgment and denied him "the deference he is due as the non-moving party."

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (citations omitted). Our

---

[1] Wilson also alleged state-law breach of contract and bad faith claims that were dismissed below and are not relevant to this appeal.

4

summary judgment analysis is the same under Title VII and § 1981. *Id.* We apply the *McDonnell Douglas* burden-shifting analysis in Title VII and § 1981 claims to determine if summary judgment is appropriate. *Id.*; *see also McDonnell Douglas Corp. v. Green* 411 U.S. 792, 802 (1973).

> To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

*Davis*, 383 F.3d at 317 (citations omitted).

For purposes of this opinion, we assume without deciding that Wilson established a prima facie case of discrimination. Accordingly, we focus our analysis on whether Exxon articulated a legitimate, nondiscriminatory reason for terminating Wilson, and if so, whether Wilson presented sufficient evidence of pretext to survive summary judgment.

**B.**

As an initial matter, it is important to make clear that a defendant's burden to articulate a legitimate, nondiscriminatory reason for its adverse employment action is a burden of production and not persuasion. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 507 (citation and internal quotation marks omitted). "[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that

unlawful discrimination was not the cause of the employment action." *Id.* (citation and internal quotation marks omitted) (alteration in original).

In this case, Exxon's proffered reason for terminating Wilson was his failure to follow operational procedures and failure to adhere to his supervisor's directives. Exxon alleges that Wilson's dereliction of duty resulted in a fairly catastrophic gasoline spill that cost the company approximately $340,000. "The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167–68 (5th Cir. 1999). Accordingly, we conclude that Exxon produced a legitimate, nondiscriminatory reason that rebuts Wilson's prima facie case of discrimination.

## C.

Because Exxon rebutted Wilson's prima facie case, we now address Wilson's claim that Exxon's stated reason for his termination is pretext for intentional discrimination. To support his position, Wilson claims, *inter alia*, that Exxon did not perform a thorough or fair investigation into the gasoline spill because if it had, the only true conclusion it could reach is that Wilson complied with operational procedures and played no role in the incident. Wilson further asserts that Exxon has a history of treating African American employees differently than Caucasian employees.

"On summary judgment . . . the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citation omitted). "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

Viewing the facts in the light most favorable to Wilson, we conclude that he failed to present substantial evidence of pretext such that a reasonable factfinder could conclude that Exxon's proffered explanation for his termination was false. *See id.* at 404–05. At its core, this lawsuit is based upon Wilson's disagreement with Exxon's conclusion that he played a role in the gasoline spill that occurred on his watch as a PTL. Wilson ardently objects to any suggestion that he was—in any way—responsible for the gasoline spill. Because Exxon states otherwise, he concludes that his dismissal must be based upon his race.

Despite Wilson's disagreement with Exxon's investigative methods and findings, the true question before this court is not whether Exxon performed a stellar investigation or whether its investigative findings were correct. *See Mayberry v. Vought Aircraft Co.,* 55. F.3d 1086, 1091 (5th Cir. 1995) ("[Plaintiff] misses the mark. The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). Our inquiry is focused on whether Wilson presented substantial evidence to demonstrate that Exxon's proffered reasons were pretext for racial discrimination.

Exxon concluded that its Region 4 PTLs, one Caucasian and one African American, were at fault for a costly gasoline spill. Exxon decided to terminate both PTLs based upon their failure to comply with operational procedures and direct instructions from their supervisor. The record is devoid of any persuasive evidence that Exxon utilized this dangerous and costly incident as pretext to terminate Wilson based upon his race. Wilson's reliance on the testimony of former African American employees—that they were treated differently from Caucasian employees—is insufficient to create an issue of fact with respect to Wilson's termination. Assuming all of the facts provided by the former employees are true, they are not relevant to the discrete matter of

whether Wilson was terminated because of his race. None of the former employees provided testimony that shed light on whether Exxon, in this particular instance, acted with racially discriminatory motives. Furthermore, Wilson's testimony about his own experiences at Exxon, taken as true, do not suffice to create a fact issue in this case. Essentially, Wilson proffered no evidence that creates a genuine issue of material fact with respect to whether Exxon acted with discriminatory animus toward him in the context of his termination. Accordingly, we conclude that summary judgment is appropriate in this case.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's summary judgment in favor of Exxon.