# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31251

United States Court of Appeals
Fifth Circuit

**FILED**
June 29, 2015

Lyle W. Cayce
Clerk

ANTHONY MINNIS,

     Plaintiff - Appellant

v.

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE,

     Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:13-CV-5

Before WIENER, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

Anthony Minnis, former head coach of the Louisiana State University women's tennis team, appeals the district court's grant of summary judgment dismissing his Title VII, Title IX, and state-law claims against the University's Board of Supervisors ("LSU"). We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-31251

## FACTUAL AND PROCEDURAL BACKGROUND

LSU hired Anthony Minnis as head coach of its women's tennis team in 1991, making him the first black head coach of any sport in the school's history. Minnis remained as head coach for 21 years until LSU elected not to renew his contract in June 2012.

During his time at LSU, Minnis received various awards, including being chosen as the Southwest Regional Women's Tennis Coach of the Year five times and the Southeastern Conference ("SEC") Coach of the Year once. During that same time, though, the women's tennis team struggled. In the course of his 21 years as head coach, Minnis's teams achieved a winning record in the SEC on only three occasions. His overall SEC win-loss record was 86-146. During his last four years at LSU, Minnis's total SEC win-loss record was 16-27. Minnis's teams competed in the NCAA tournament in 15 out of his 21 years, but in his last 12 years, none advanced past the second round. In the year preceding Minnis's termination, his team did not reach the NCAA tournament and the team had losing seasons in each of the three years preceding his termination.

LSU hired Jeff Brown, who is white, as head coach of its men's tennis team in 1998. In the five years preceding Minnis's termination, the men's and women's tennis teams had nearly identical records. But in the 15 years during which both coaches were at LSU, the men's team finished with a higher national ranking than the women's team every year except one. During Brown's most successful season, the men's team was ranked second in the nation; the highest ranking achieved by the women's team during Minnis's tenure was eighteenth. Brown's overall record for the 15 years that his time at LSU overlapped with Minnis's was 237-142 and his SEC record was 89-76. Minnis's overall record for that same time was 191-174 and his SEC record was 61-104.

No. 14-31251

Throughout his employment, Minnis received written performance evaluations. Minnis's last evaluation was in June 2009. LSU evaluated him based on a wide range of factors, including planning and organization, leadership, and sports knowledge. The results of Minnis's evaluations were generally mixed.

In February 2008, Judy Southard, one of Minnis's supervisors, issued him a written reprimand expressing "general displeasure" with Minnis's management of the program. Southard identified three particular incidents: (1) making inappropriate comments about a team member, (2) failing to properly account for expenses, and (3) a secondary NCAA violation pertaining to Minnis's purchase of motivational books for team members. In response to Southard's reprimand, Minnis complained to administrators that he believed Southard to be a racist. The administrators told Minnis that they disagreed and asked why he reached that conclusion. Minnis offered no facts to support his contention and made no further allegations of racial discrimination.

In February 2012, Minnis was reprimanded for a serious incident involving a team member. As punishment for showing up late to a charity event, Minnis ordered the team member to run laps. There is evidence that Minnis was aware that the student had been drinking the night before. The student collapsed while running and had to be resuscitated twice. In March 2012, Minnis brought in Tiffany Jones, a sports psychology consultant, to meet with team members. During Jones's meetings, students expressed various complaints about Minnis's coaching style and techniques.

Throughout his time at LSU, Minnis regularly complained to administrators about what he perceived to be inadequate practice facilities, particularly the lack of an indoor facility. Brown also complained about the lack of an indoor facility. The men's and women's teams used the same on-campus outdoor facilities. Though both teams had access to the same off-

3

No. 14-31251

campus practice facility owned by the Baton Rouge Recreation and Parks Commission, Minnis chose to have his team practice at the Country Club of Louisiana.

At some point during his employment, Minnis questioned whether he was being adequately compensated. LSU responded that it set Minnis's salary in accordance with his team's ranking and on par with other SEC women's tennis coaches. Minnis never indicated to LSU that he believed that he was being inadequately compensated because of his race and he conceded that he did not know how his salary was calculated.

LSU publicly announced on June 30, 2012 that it would not renew Minnis's contract. At that time, Minnis was earning $85,000 per year. Minnis was replaced by Julia Sell, a white female. Sell signed a four-year contract with a base salary of $110,000 per year. Sell had no prior head coaching experience, but had some assistant coaching experience. LSU contends that Sell received a higher salary both because it was competing with the University of South Carolina ("USC") to hire her and as a result of the challenges associated with attracting a coach to a team with a losing record and morale issues.

Minnis filed this suit in Louisiana state court in November 2012. He named LSU and several former supervisors as defendants. The defendants removed the case to the United States District Court for the Middle District of Louisiana in January 2013. Minnis filed an amended complaint in May, alleging a variety of state and federal claims. In September, the district court dismissed all defendants other than LSU. The district court also dismissed all of Minnis's claims except those for racial discrimination, harassment, and retaliation under Title VII; retaliation under Title IX; and discrimination and retaliation under state law. In October 2014, the district court granted LSU's

No. 14-31251

motion for summary judgment, dismissing all of Minnis's remaining claims with prejudice.

DISCUSSION

We review a grant of summary judgment de novo, applying the same standards as the district court. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is no genuine factual dispute "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party . . . ." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011). We consider the facts and evidence in the light most favorable to the non-moving party. *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (per curiam).

*I. Title VII discrimination claims*

First, Minnis appeals the district court's grant of summary judgment on his Title VII disparate compensation and discriminatory discharge claims. A Title VII discrimination claim based on circumstantial evidence is analyzed using the *McDonnell Douglas* burden-shifting framework. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). To survive summary judgment, a plaintiff must first present a prima facie case of discrimination. *Id.* at 317. Once a plaintiff establishes a prima facie case, an inference of discrimination is established. *Id.* The burden then shifts to the employer to rebut the claim with a legitimate, non-discriminatory reason for the employment action. *Id.* If the employer meets this burden, the inference of discrimination disappears and the burden shifts back to the plaintiff to establish that the employer's proffered reason is pretextual. *Id.*

5

A.  Disparate compensation

Under the *McDonnell Douglas* framework, to succeed on his disparate compensation claim, Minnis must first present a prima facie case of discrimination.  To do so, he must show that: (1) "he was a member of a protected class," and (2) "he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008).  "An individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are nearly identical to those of a better-paid employee who is not a member of the protected class."  *Id.* at 523 (citation and internal quotation marks omitted).

No one disputes that Minnis is a member of a protected class.  Thus, as the district court correctly noted, the only issue at the prima facie stage is whether Minnis was paid less than white employees for substantially the same job responsibilities.  The district court concluded that none of the other head coaches, including Minnis's replacement, were proper comparators.  The court then held that even assuming, arguendo, that Minnis could establish that the other coaches were proper comparators, Minnis was still unable to rebut LSU's legitimate, non-discriminatory reasons for the disparity in pay.  LSU asserted the following reasons for the pay disparity: (1) Minnis did not have a competitive record that would justify merit increases, (2) Minnis's salary was set by comparing his performance to that of other women's tennis coaches in the SEC, and (3) Minnis's salary was calculated based on the market for the position at the time of hiring.  In response, Minnis disputed that his salary was determined based on the salaries of other SEC women's tennis coaches.  He also asserted that the disparity between his salary and those of the other coaches "was so glaring" that others "took notice."  The district court

6

determined that Minnis's self-serving conclusions and subjective beliefs were insufficient to establish pretext.

Minnis appeals the district court's conclusion that the other head coaches were not proper comparators. We need not consider this argument because even if Minnis was able to establish a prima facie case, his claim still fails at the pretext stage.

"Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). A plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates" and must show "that a discriminatory motive more likely motivated [the] employer's decision . . . or that [the] employer's explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citation and internal quotation marks omitted).

Once LSU articulated non-discriminatory reasons for the pay disparity, the burden shifted to Minnis to rebut each of those reasons. He has not offered any evidence beyond his subjective beliefs to meet his burden. Thus, the district court correctly concluded that there was no genuine dispute of material fact regarding pretext and, accordingly, Minnis's disparate compensation claim fails.[1]

---

[1] Minnis also argues that the district court erred in holding that his disparate compensation claims, as they relate to his salary prior to 2011, are time-barred. Minnis contends that the district court's holding is incorrect in light of recent amendments made to Title VII following the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). Though raised below, this argument was not addressed by the district court. We have already determined that Minnis's disparate compensation claim fails. Consideration of this additional argument would not affect the outcome of this case.

No. 14-31251

B. Discriminatory discharge

Minnis's discriminatory discharge claim is similarly analyzed using the *McDonnell Douglas* burden-shifting framework. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). This requires Minnis to establish first a prima facie case of discrimination by demonstrating that:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Id.*

The district court discussed the fourth element as the only one in dispute. The court held that Minnis had failed to provide sufficient evidence to evaluate whether the head coaches of other sports were similarly situated to him, but that there was sufficient evidence to analyze whether Minnis was similarly situated to Brown, the men's tennis coach. The court determined that Brown and Minnis were treated differently because Brown had a superior win-loss record, and therefore the two could not be considered similarly situated.

The court then held that even assuming Minnis had established a prima facie case, his claim still failed because he could not rebut LSU's non-discriminatory reasons for termination. It accepted LSU's three proffered reasons for terminating Minnis: (1) his failure to meet established goals, (2) his losing record, and (3) morale issues. In response, Minnis offered evidence of LSU's "shifting reasons" for terminating him as supposed proof of pretext. Minnis explained that LSU first said, without further elaboration, that he was being fired because the school had decided to go in another direction. After Minnis filed his Charge of Discrimination, however, LSU said that he was being fired because of his poor performance. In addition, LSU maintained that Minnis's NCAA violations and the team's morale problems also contributed to

its decision to terminate Minnis.  The district court held that pointing to these "shifting reasons" did not prove pretext.

On appeal, Minnis does not address the district court's ruling about the comparators and instead focuses on the district court's alternative reasoning that he failed to show pretext.  He again argues that LSU's allegedly shifting reasons provide evidence of pretext.  We have held that *inconsistent* reasons offered at different times can create a fact issue of pretext.  *Gee v. Principi,* 289 F.3d 342, 347–48 (5th Cir. 2002).  We conclude, though, that proof of an employer's reasons becoming more detailed as the dispute moves beyond the initial notice to an employee and enters into adversarial proceedings, is insufficient to create a jury question regarding pretext absent an actual inconsistency.  In an unpublished opinion with which we agree, we clarified that explanations whose only difference lay in their level of generality were not inconsistent.  *Hamilton v. AVPM Corp.*, 593 F. App'x 314, 322 (5th Cir. 2014) (per curiam).  That characterization equally applies here.[2]

## II. Title VII hostile work environment

Next, Minnis appeals the district court's dismissal of his hostile work environment claim.  To establish a race-based hostile work environment claim under Title VII, a plaintiff must show that he:

---

[2] Minnis relies on a Seventh Circuit case to support his pretext argument.  *See Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681 (7th Cir. 2007).  There, a female coach sued her former university employer after she was terminated, alleging sex discrimination.  *Id.* at 684.  Based on the university's "suspect" reasons for terminating the coach, the court held that the coach had sufficiently shown that there was a question of fact as to pretext.  *Id.* at 692–94.  The court emphasized that the coach had never been disciplined prior to termination, had never been cited for an NCAA violation, and had outperformed her colleagues.  *Id.* Minnis argues that LSU, similarly, did not discipline him until after he was terminated and that his colleagues, like those in *Peirick*, were baffled by his termination.  Contrary to Minnis's arguments, *Peirick* is factually distinct.  Minnis was reprimanded on several occasions, received negative feedback in several performance evaluations, had a poor performance record, and had several NCAA violations.

(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).  For purposes of the fourth element, "[h]arassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* (citation and internal quotation marks omitted).  In considering whether a workplace constitutes an abusive work environment, this court must look at the totality of the circumstances, including the following relevant factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citation and internal quotation marks omitted).  Furthermore, "the conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (citation and internal quotation marks omitted).

The district court determined that Minnis failed to establish a hostile work environment claim because he failed to show conduct that affected a term, condition, or privilege of employment.  In analyzing the claim, the court considered only Minnis's 2012 reprimand, which was issued in response to the events involving the intoxicated student who collapsed at a charity event.  The court refused to consider Minnis's evaluations or the 2008 reprimand, explaining that they were time-barred.  The court concluded that the 2012 reprimand, on its own, was insufficient to create a hostile work environment.

No. 14-31251

On appeal, Minnis argues that the district court erred in refusing to consider the evaluations and 2008 reprimand.  Minnis notes that the Supreme Court has "rejected a notion of parsing incidents, one from another, for purposes of a hostile environment claim."  *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 638 (2007).  LSU responds that the district court correctly excluded the evaluations and 2008 reprimand, but even if they had been considered, Minnis's hostile work environment claim would still fail because the combination of acts about which Minnis complains is neither severe nor pervasive enough to have created a hostile work environment.

It is unnecessary for us to decide whether the district court erred in refusing to consider the additional evidence because even with the evaluations and 2008 reprimand, Minnis still has not shown a race-based hostile work environment.  First, Minnis has not shown that any of the evaluations or reprimands constitute harassment based on race.  *See Hernandez*, 670 F.3d at 651; *Ramsey*, 286 F.3d at 268.  He also has not shown that the conduct "affected a term, condition, or privilege of employment . . . ."  *See Ramsey*, 286 F.3d at 268.  Based on the totality of the circumstances, the combination of alleged acts does not constitute a hostile work environment because he has not shown that the acts were "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  *Id.* (citation and internal quotation marks omitted).  Accordingly, Minnis's claim fails regardless of whether the additional evaluations and reprimand are considered.

*III. Title IX retaliation*

Minnis also contends that the district court applied the wrong legal standard in analyzing his Title IX retaliation claim.  In setting out the legal standard, the district court explained:  "To establish a prima facie case of Title

11

IX retaliation, a plaintiff must show that he or she participated in activity protected by Title IX and that the defendant took an adverse action against him or her because of that activity."   The district court then stated that although this court has not "directly addressed" whether the Title VII burden-shifting framework should be utilized in Title IX cases, many other circuits "have looked to Title VII as the appropriate analog for the legal standards in Title IX claims."   The court then applied the Title VII burden-shifting framework to Minnis's Title IX retaliation claim.

Minnis now contends that the Title VII standard should not have been applied to his Title IX claim.  In particular, the "because" standard should not have been applied.  According to Minnis, instead of being required to show that he was retaliated against because he complained of sex discrimination, he should only be required to show that the complaint was "a motivating factor," potentially among others, in the retaliation.  He asserts that this is an issue of first impression for this court.

What the district court stated was that the applicability of the Title VII burden-shifting framework to Title IX claims is unsettled.  The court never suggested that what is required to establish a prima facie case of Title IX retaliation is uncertain.  The argument that the district court erred in applying the "because" causation standard goes to Minnis's prima facie case.   The Supreme Court has held that the "because" standard applies at the prima facie stage.  *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) ("[W]hen a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX").

Moreover, Minnis's claim fails regardless of what standard is applied. The district court held that Minnis had failed to show that he had made any Title IX complaints.  The court explained that Minnis's complaints about LSU's

on-campus facilities were not Title IX complaints because both the men's and women's coaches complained about the facilities and, although Minnis also complained about the off-campus facility, he is the one who selected it, and he had access to the same off-campus facility as the men's team.  On appeal, Minnis contends that his complaints differed from Brown's complaints because Minnis is the only one who put his complaints in writing.  Minnis's argument is unconvincing.  He has not shown that his complaints were related to gender inequality and thus has not shown that he engaged in activity protected by Title IX.  Thus, regardless of what standard is applied, Minnis's claim fails because he cannot establish a key element of his prima facie case.

## IV. Title VII retaliation and state-law claims

Throughout his brief, Minnis asserts that he is appealing the district court's holding on his Title VII retaliation claim.  The district court determined that Minnis had failed to demonstrate that he engaged in any activity protected by Title VII, and even if he had, there was no evidence of a causal link between that activity and his termination.  The court went on to explain that even if Minnis had established a prima facie case of retaliation, he still could not rebut LSU's legitimate non-discriminatory reasons for its employment decision.  Minnis makes no argument with respect to the district court's holding that he failed to establish a prima facie case of Title VII retaliation and has therefore waived review of this issue.  "A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it.  It is not enough to merely mention or allude to a legal theory." *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (citations and internal quotation marks omitted).  The same is true with respect to Minnis's state-law claims.  Though Minnis contends that he is appealing the district

court's holding on those claims, he advances no legal argument.  They are likewise waived.

AFFIRMED.